# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| **VALENCELL, INC.,**  Plaintiff,  v.  **BRAGI STORE, LLC, BRAGI NORTH AMERICA, LLC, and BRAGI GMBH,**  Defendants. | Case No. 5:16-CV-895-D  Judge James C. Dever, III  **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BRAGI STORE, LLC, BRAGI NORTH AMERICA, LLC, AND BRAGI GMBH'S MOTION TO STAY THE CASE PENDING RESOLUTION OF *INTER PARTES* REVIEW PROCEEDINGS**

# TABLE OF CONTENTS

                                                                **Page**

Table of Authorities ................................................................................................................ ii

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................1

    A. District Court Litigation................................................................................1

    B. *Inter Partes* Review .......................................................................................3

III. LEGAL STANDARD......................................................................................................4

    A. *Inter Partes* Review .......................................................................................4

    B. Stay of District Court Litigation Pending *Inter Partes* Review....................5

IV. ARGUMENT ...................................................................................................................6

    A. All Factors Weigh in Favor of Staying this Case ..........................................6

        1. The Preliminary Stage of this Case Favors a Stay .......................7

        2. A Stay Pending Resolution of the *Inter Partes* Review Proceedings Will Simplify the Issues in this Case .........................................................7

        3. Valencell Will Not Suffer Undue Prejudice from a Stay.............................9

    B. Staying the Entire Case Will Conserve the Court's and the Parties' Resources..............11

V. CONCLUSION..............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biogaia AB v. Nature's Way Prods., Inc.*,
   No. 5:10-CV-449-FL, 2011 WL 3664350 (E.D.N.C. Aug. 18, 2011) ............................ *passim*

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
   No. 12-CV-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014) .....................14

*buySAFE, Inc. v. Google, Inc.*,
   No. 3:13CV781-HEH, 2014 WL 2714137 (E.D. Va. June 16, 2014) .....................10

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   No. 5:08–CV–00119–H, 2010 WL 3430854 (E.D.N.C. Aug. 31, 2010) ....................5, 6, 7, 10

*Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*,
   No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374 (E.D.N.C. Feb. 15,
   2008) ................................................................................................................................6

*Destination Maternity Corp. v. Target Corp.*,
   12 F. Supp. 3d 762 (E.D. Pa. 2014) ...............................................................................14

*e-Watch, Inc. v. ACTi Corp.*,
   No. SA-12-CA-695, 2013 WL 6334372 (W.D. Tex. Aug. 9, 2013) .........................9

*Intellectual Ventures II LLC v. Huntington Bancshares Inc.*,
   No. 2:13-CV-00785, 2014 WL 2589420 (S.D. Ohio June 10, 2014) ........................9

*Intellectual Ventures II LLC v. U.S. Bancorp*,
   No. CIV. 13-2071 ADM/JSM, 2014 WL 5369386, (D. Minn. Aug. 7, 2014) .......11

*Landis v. North American Co.*,
   299 U.S. 248 (1936) .........................................................................................................5

*Neste Oil Oyj v.Dynamic Fuels, LLC*,
   12-CV-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ...........................8, 10

*Paice LLC v. Ford Motor Co.*,
   No. CV MJG-14-492, 2015 WL 9898135 (D. Md. Aug. 12, 2015) .......................14

*Pentair Water Pool & Spa, Inc. v. Hayward Indus., Inc.*,
   No. 5:11-CV-459-D, 2014 WL 351865 (E.D.N.C. Jan. 31, 2014) .......................6, 7

*Pleasurecraft Marine Engine Co. v. Indmar Prod. Co.*,
   No. 8:14-CV- 04507-MGL, 2015 WL 5437181 (D.S.C. Sept. 15, 2015) ............5, 8

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
   549 F.3d 842 (Fed. Cir. 2008)..................................................................................5

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)..............................................................................10

**Statutes**

35 U.S.C. §§ 102 and 103 ...............................................................................................4

35 U.S.C. §§ 311-319 .....................................................................................................4

35 U.S.C. § 314(a) ..........................................................................................................8

35 U.S.C. §§ 314(a), 315(a)(11) .....................................................................................5

35 U.S.C. § 314(b) ..........................................................................................................5

35 U.S.C. § 315(b) ..........................................................................................................4

35 U.S.C. § 315(e)(2).......................................................................................................5

**Rules**

Rule 26(f) ...................................................................................................................3, 12

**Other Authorities**

37 C.F.R. § 42.100 ..........................................................................................................5

37 C.F.R. § 42.107(b) .....................................................................................................5

77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R. § 42.100 et seq)............5

U.S. Patent No. 8,647,270.............................................................................................1, 2

U.S. Patent No. 8,700,111...............................................................................................2

U.S. Patent No. 8,929,965........................................................................................1, 2, 3

U.S. Patent No. 8,934,941........................................................................................1, 2, 3

U.S. Patent No. 8,934,952...............................................................................................2

## I.   INTRODUCTION

Plaintiff Valencell, Inc. ("Valencell") accuses Defendants Bragi Store, LLC, Bragi North America, LLC, and Bragi GmbH (collectively "Bragi") of infringing four U.S. Patents—Nos. 8,647,270 ("the '270 patent"), 8,923,941 ("the '941 patent"), 8,929,965 ("the '965 patent"), and 8,934,952 ("the '952 patent") (collectively "patents-in-suit"). The patents-in-suit relate to wearable devices that monitor physiological and motion parameters of a user. Valencell has filed similar lawsuits against Apple Inc. and Fitbit, Inc., asserting the '941 and '965 patents against them, as well as two other patents. In response, Apple filed petitions for *Inter Partes* Review (IPR) of the asserted patents, including the '941 and '965 patents, with the Patent Trials and Appeals Board (PTAB). The petitions for IPR of the '941 and '965 patents have been granted, and as a result this Court stayed the Apple and Fitbit cases on June 28, 2017, pending resolution of the IPR proceedings. Apple and Fitbit argued that granting a stay would conserve judicial resources, and that the relevant factors weighed in favor of granting a stay, and the Court agreed that a stay was warranted. The same rationale applies with equal force to the instant case. Bragi therefore respectfully requests that the Court stay this case, pending the resolution of the '941 and '965 patent IPRs.

## II.   BACKGROUND

### A.   District Court Litigation

On November 11, 2016, Valencell filed a complaint [Dkt. No. 1] alleging that Bragi was infringing four patents. This litigation is the third of three patent infringement actions Valencell commenced in this Court. On January 4, 2016, prior to filing this lawsuit, Valencell filed complaints alleging patent infringement of four patents by both Apple Inc. and Fitbit, Inc. [Case No. 5:16-CV-1-D, Dkt. No. 1; Case No. 5:16-CV-2-D, Dkt. No. 1]. Two of the patents asserted

in the actions against Apple and Fitbit, the '941 patent and the '965 patent, are also asserted against Bragi. [Dkt. No. 1]. The following table summarizes the asserted patents:

| Defendant | Bragi | Apple (Case No. 5:16-CV-1-D) | Fitbit (Case No. 5:16-CV-2-D) |
|---|---|---|---|
| Patents-in-suit | **8,923,941** <br> **8,929,965** <br> 8,647,270 <br> 8,934,952 | **8,923,941** <br> **8,929,965** <br> 8,886,269 <br> 8,989,830 | **8,923,941** <br> **8,929,965** <br> 8,886,269 <br> 8,989,830 |

All of the patents asserted in the three cases by Valencell relate to body-worn sensors, primarily directed toward measurement of physiological and motion related data of users. [*See* Dkt. No. 1 at ¶¶ 8-34; Case No. 5:16-CV-1-D, Dkt. No. 1 at ¶¶ 16-40; Case No. 5:16-CV-2-D, Dkt. No. 1 at ¶¶ 11-35]. The accused devices in the Apple and Fitbit cases are wrist worn devices [*see* Case No. 5:16-CV-1-D, Dkt. No. 1 at ¶¶ 5-13; Case No. 5:16-CV-2-D at Dkt. No. 1 at ¶¶ 3, 15]; the accused device in this litigation is a device inserted into the user's ear [Dkt. No. 1 at ¶ 27]. As reflected in the table above, the cases involve similar technology and overlapping patents. Importantly, the two patents in this suit that are not currently subject to IPR proceedings are similar to, and from the same patent family as, the two patents that are before the PTAB. [U.S. Patent No. 8,647,270, Dkt. No. 1-2 at col. 1, ln. 7-14; U.S. Patent No. 8,934,952, Dkt. No. 1-3 at col. 1, ln. 6-15].

The four patents in this suit all share three common inventors. [*See* Dkt. Nos. 1-1; 1-2; 1-3; 1-4]. All of the patents-in-suit claim priority to the same three provisional patent applications. [*Id.*]. The '941 and '952 patents are both continuation applications of U.S. Patent No. 8,700,111 and share identical specifications. [*See* Dkt. Nos. 1-1; 1-3]. The '965 patent is a continuation application of patent application No. 13/715,247 that was itself a continuation of U.S. Patent No. 8,700,111. [Dkt. No. 1-4 at col. 1, ln. 7-18]. The '965 patent shares portions of its specification and figures with the '941 and '952 patents. [*See* Dkt. No. 1-4].

The parties have not yet taken any discovery. Pursuant to the Court's order [Dkt. No. 30], the parties conducted the Rule 26(f) meeting and submitted their discovery plan [*see* Joint Discovery Plan, Dkt. No. 31]. Discovery has not yet begun as neither party has made any disclosures, nor served any document requests. [*Id.*]. The only activity in the case to this point, beyond the pleadings, has been appearances by counsel and an unopposed motion to extend the deadline to file Bragi's answer. [*See* Dkt. Nos. 16-22].

### B. *Inter Partes* Review

On November 23, 2016, Apple filed six IPR petitions before the PTAB requesting cancellation of numerous claims. [Memo in Support of Mot. to Stay, Case No. 5:16-CV-1-D, Dkt. No. 97 at 1, 5]. Three of Apple's IPR petitions sought cancellation of all claims of the '941 and '965 patents, which necessarily include the claims of the '941 and '965 patents that Valencell has asserted against Bragi. [*Id.*].[1] Following Apple's IPR petitions, both Apple and Fitbit filed motions to stay their respective cases pending the outcome of the IPR petitions. [Case No. 5:16-CV-1-D, Dkt. No. 96; Case No. 5:16-CV-2-D, Dkt. No. 57].

On June 2, 2017, the PTAB instituted IPR2017-00315 on all challenged claims of the '965 patent. [Dkt. No. 32-2, Ex. 1, Institution Decision of IPR2017-00315]. On June 6, 2017, the PTAB instituted IPR2017-00319 on claims 1, 2, and 6-13 of the '941 patent and IPR2017-00321 on claims 14-21 of the '941 patent. [Dkt. No. 32-3, Ex. 2, Institution Decision of IPR2017-00319; Dkt. No. 32-4, Ex. 3, Institution Decision of IPR2017-00321]. Following the PTAB's institution of the IPR proceedings, the Court issued orders in the Apple and Fitbit cases [Case No. 5:16-CV-1-D, Dkt. No. 206; Case No. 5:16-CV-2-D, Dkt. No. 115] granting the motions to stay pending resolution of the instituted IPR proceedings.

---

[1] Bragi is currently evaluating whether to file IPR petitions for the '270 and '952 patents that were not the subject of Apple's IPR petitions. Bragi may file its petitions at any time until January 18, 2018 under 35 U.S.C. § 315(b).

The parties have discussed the topic of a stay pending the outcome of the IPR proceedings. [Dkt. No. 31 at ¶ 2]. Bragi believes a stay of the entire litigation is appropriate pending the outcome of the IPR proceedings on the '941 and '965 patents as this option conserves resources. [*Id.*]. Valencell did not unequivocally object to a stay of the case with respect to the '941 and '965 patents, but it stated that the case should not be stayed with respect to the '270 and '952 patents and that fact discovery should be allowed to proceed for at least the '270 and '952 patents. [*Id.*].

Staying the entire case will conserve resources and prevent duplicative discovery. All four patents share common inventors [*see* Dkt. Nos. 1-1; 1-2; 1-3; 1-4], and the Bragi witnesses who would testify about the structure of the accused device would be the same for all four patents because the same product was accused for all four patents-in-suit [Dkt. No. 1 at ¶¶ 12, 19, 26, 33]. Because the patents derive from the same provisional patent applications, they share common subject matter and therefore, the documents produced by both sides would also relate to all four patents. Where the likely witnesses, documents, and discovery requests relate to all four patents, staying the entire case at this stage will maximize efficiency.

## III.    LEGAL STANDARD

### A.    *Inter Partes* Review

The current IPR procedure was enacted in 2012 as part of the America Invents Act ("AIA"). 35 U.S.C. §§ 311-19. The IPR proceeding allows a petitioner to challenge the validity of a patent claim under 35 U.S.C. §§ 102 and 103. The purpose of the IPR procedure was to "create a timely, cost-effective alternative to litigation," through the creation of a "more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." 77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R. § 42.100 *et seq.*).

By statute, the PTAB must decide whether to institute IPR within six months after the IPR petition is docketed. *See* 37 C.F.R. § 42.107(b); 35 U.S.C. § 314(b). If the PTAB institutes the IPR, it must issue a final decision within twelve months thereafter. 35 U.S.C. §§ 314(a), 315(a)(11); 37 C.F.R. § 42.100.

The IPR procedure facilitates the conservation of substantial judicial and party resources in concurrent district court litigation. The IPR procedure includes a claim construction that may inform the Court's analysis. *See, e.g.*, *Pleasurecraft Marine Engine Co. v. Indmar Prod. Co.*, No. 8:14-CV- 04507-MGL, 2015 WL 5437181, at *2 (D.S.C. Sept. 15, 2015) ("[T]his Court's claim construction will be informed and aided by additional extrinsic evidence in the form of PTAB's claim construction, which must be considered by the Court when construing a claim term."). Moreover, petitioners in an IPR proceeding are estopped from raising invalidity grounds that could reasonably have been raised during the IPR proceeding. 35 U.S.C. § 315(e)(2).

### B. Stay of District Court Litigation Pending *Inter Partes* Review

The power to stay proceedings is part of the Court's inherent authority to manage its docket. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Court may exercise its authority to stay patent litigation pending the result of proceedings before the Patent Office. *See, e.g.*, *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *Cellectis S.A. v. Precision Biosciences, Inc.*, No. 5:08-CV-00119-H, 2010 WL 3430854 at *2 (E.D.N.C. Aug. 31, 2010). "[T]here is a liberal policy in favor of granting motions to stay proceedings" pending the outcome of [Patent Office] proceedings. *Biogaia AB v. Nature's Way Prods., Inc.*, No. 5:10-CV-449-FL, 2011 WL 3664350, at *1 (E.D.N.C. Aug. 18, 2011) (quoting *Cellectis S.A.*, 2010 WL 3430854, at *2); *see Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*, No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374, at *4 (E.D.N.C. Feb. 15, 2008). This Court has previously noted the benefits of granting stays pending Patent Office examination,

including, "reducing complexity and length of the litigation," alleviating "discovery problems relating to the prior art," limiting the "issues, defenses, and evidence," and reducing costs of the litigation. *Cellectis S.A.*, 2010 WL 3430854, at *3 (internal citations omitted). Indeed, the Court noted in the Apple case that "[if the IPR is instituted] it's generally been my practice to say, I'll let them have at it and I'll stay the proceeding." [Transcript of Scheduling Hearing, Feb. 28, 2017, Case No. 5:16-CV-1-D, Dkt. No. 165, at 11:2-5].

When considering whether to grant a stay pending review by the Patent Office, courts generally consider the following three factors:

(1) whether discovery is complete and a trial date has been set;

(2) whether a stay of litigation will simplify the issues in question and streamline the trial of the case; and

(3) whether a stay would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party. *Pentair Water Pool & Spa, Inc. v. Hayward Indus., Inc.*, No. 5:11-CV-459-D, 2014 WL 351865, at *2 (E.D.N.C. Jan. 31, 2014).

### IV. ARGUMENT

#### A. All Factors Weigh in Favor of Staying this Case.

Each of the three factors considered by courts when determining whether to grant a stay pending review by the Patent Office weigh strongly in favor of granting a stay in this case. The case has only just begun, with the entirety of discovery, claim construction, and dispositive motions remaining. The IPR petitions have already been granted for the '941 and '965 patents, indicating a belief by the PTAB that there is a "reasonable likelihood" that the instituted claims are invalid. There is a high likelihood that a stay will simplify the issues in the case for all of the patents-in-suit, not just for the '941 and '965 patents, because all of the patents are similar. Finally, Valencell will suffer no undue prejudice from a stay.

### 1. The Preliminary Stage of this Case Favors a Stay.

This litigation has only just begun. No schedule has been set and thus no trial date has been set. No discovery requests have been served and no documents have been produced. [*See* Dkt. No. 31]. There has been only a single, unopposed motion in the case to date. [Motion for Extension of Time, Dkt. No. 22]. This Court has previously noted that, where "discovery has just begun [] a stay [is] particularly attractive." *Biogaia AB*, 2011 WL 3664350, at *2. This Court and others in this Circuit have routinely found that a stay is appropriate in cases far more advanced than the instant case. *See, e.g., Cellectis S.A.*, 2010 WL 3430854, at *3 (finding this factor weighed in favor of stay when fact discovery was nearly complete and claim construction briefing was complete); *Pentair*, 2014 WL 351865, at *3 (holding this factor weighed in favor of stay when trial date had been set, fact discovery was well underway, and claim construction briefing was complete). That was the case in the Apple and Fitbit cases—which this Court stayed—where the parties in both cases had completed substantial amounts of discovery and claim construction briefing at the time the motions to stay were filed. [*See* Valencell's Opposition to Apple's Motion to Stay, Case No. 5:16-CV-1-D, Dkt. No. 103 at 14-15; Valencell's Response to Fitbit's Motion to Stay, Case No. 5:16-CV-2-D, Dkt. No. 59 at 11]. Thus, this factor weighs even more strongly in favor of a stay in this case, as the entire balance of the lawsuit beyond the pleadings remains to be completed.

### 2. A Stay Pending Resolution of the *Inter Partes* Review Proceedings Will Simplify the Issues in this Case.

The standard for instituting an IPR petition is that there is a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Here, the PTAB instituted the IPR for nearly all of the claims of the '941 and '965 patents, including both asserted claims of the '941 and '965 patents, indicating a

"reasonable likelihood" that the instituted claims are invalid. The most recent statistics published by the USPTO indicate that for IPRs that have been instituted and proceed to a final written decision, 83% have one or more claims invalidated, and that 68% have *all* instituted claims invalidated.[2]

Therefore, there is a substantial likelihood that the patent claims asserted against Bragi that are subject to IPR proceedings will be cancelled by the PTAB, thus removing them from this lawsuit. This will limit the scope of the case to any remaining claims, allowing fact and expert discovery to be focused only to these remaining claims.

Moreover, the IPR proceedings will simplify any remaining issues because "reexamination by the USPTO will simplify the matters at issue because the PTO's expertise provided will assist the Court in evaluating claims at issue[] in the underlying litigation." *Pleasurecraft Marine Engine*, 2015 WL 5437181, at *2 (internal citations omitted).

While the '270 and '952 patents are not currently subject to IPR proceedings, "the 'issue simplification' factor does not require complete overlap [between the litigation and the IPR]." *Neste Oil Oyj v.Dynamic Fuels, LLC*, 12-CV-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013). Indeed, this Court granted a stay in the Apple case despite Valencell having pled breach of contract and unfair and deceptive trade practices claims that are not at issue in the IPR proceedings. [Case No. 5:16-CV-1-D, Dkt. No. 1 at ¶¶ 42-56].

The same rationale that warranted a complete stay of the Apple case also applies in this case. The remaining issues will be simplified or reduced even with regard to the '270 and '952 patents because, as discussed *supra*, all four patents-in-suit are directed to the same subject

---

[2] *See* Patent Trial and Appeal Board Statistics (October 31, 2016), *available at* https://www.uspto.gov/sites/default/files/documents/aia_statistics_october2016.pdf (last visited 7/11/2017) (slide 10 states that 1,058 of 1,261 final written decisions have invalidated some or all claims and 859 of 1,261 final written decisions have invalidated all instituted claims).

matter, and derive from the same provisional applications. Three of the four patents even derive from the same parent patent. Thus, the PTAB's findings with regard to the '941 and '965 patents will likely be applicable to at least some prior art, claim construction, and validity issues related to the '270 and '952 patents, further simplifying the issues to be tried and topics of discovery in this lawsuit.

Even though Bragi is not a party to Apple's IPR proceedings and is therefore not subject to the statutory estoppel, courts have commonly found that the issues will nonetheless be simplified in a parallel litigation involving patents subject to an IPR that are asserted against a non-party to the IPR. *See, e.g.*, *e-Watch, Inc. v. ACTi Corp.*, No. SA-12-CA-695, 2013 WL 6334372, at *7-8 (W.D. Tex. Aug. 9, 2013) (finding issue simplification and granting stay, even though there would be no estoppel and movant had alleged counterclaims, because of potential for invalidation of patents-in-suit); *Intellectual Ventures II LLC v. Huntington Bancshares Inc.*, No. 2:13-CV-00785, 2014 WL 2589420, at *4 (S.D. Ohio June 10, 2014) ("[I]t would defy common sense for this litigation to proceed alongside the IPR proceedings simply because Defendants are not statutorily prohibited from raising the same or similar arguments as the IPR petitioners.").

Because the PTAB has found there is a "reasonable likelihood" that the instituted claims are invalid and the opportunity to review the PTAB's analysis will aid the Court's own analysis, a substantial number of issues will likely be simplified by the IPR proceeding, and this factor weighs in favor of a stay.

### 3. Valencell Will Not Suffer Undue Prejudice from a Stay.

Valencell will not suffer any undue prejudice if a stay is granted in this case. In determining the existence of undue prejudice, courts consider a number of factors including whether the parties are direct competitors, whether the non-moving party seeks solely monetary

damages or instead seeks injunctive relief, and whether the moving party possessed a "dilatory motive" or is otherwise attempting to gain an unfair tactical advantage. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317-18 (Fed. Cir. 2014). As part of this analysis, other courts have considered additional factors, including the timing of the requests for review of the patents-in-suit and the stay, and the status of the review proceedings. *Neste Oil Oyj*, 2013 WL 3353984, at *2. Further, delay "does not constitute, by itself, undue prejudice." *Cellectis S.A.*, 2010 WL 3430854, at *4.

There is no undue prejudice from a stay where the patentee is not a direct competitor in the same market segment as the alleged infringer. *buySAFE, Inc. v. Google, Inc.*, No. 3:13CV781-HEH, 2014 WL 2714137, at *6 (E.D. Va. June 16, 2014) (granting partial stay where parties were not direct competitors). Here, there is no evidence that the parties are direct competitors. Valencell has made no allegation in its complaint that Bragi is or ever has been a competitor. [*See* Dkt. No. 1 *passim*]. Valencell has also not identified any of its products that compete with any Bragi product. [*See id.*].

While Valencell has requested preliminary and final injunctions, it has not alleged any facts that would allow the grant of such remedies. [*See* Dkt. No. 1]. When the patentee seeks an injunction, but fails to explain why money damages would not be a sufficient remedy, it is proper for the court to find that the grant of a stay would not cause undue prejudice. *See Intellectual Ventures II LLC v. U.S. Bancorp*, No. CIV. 13-2071 ADM/JSM, 2014 WL 5369386, at *5 (D. Minn. Aug. 7, 2014) (granting stay pending IPR and finding "the availability of monetary damages can ameliorate potential undue prejudice, especially where the non-moving party has not explained why money damages are not an adequate remedy").

Bragi has no dilatory motive and is not attempting to gain an unfair advantage through its motion to stay. Bragi is filing this motion at the outset of this case, prior to the Court even setting a discovery schedule. Further, the institution of Apple's IPR petitions and the grant of stays in the Apple and Fitbit case happened within the past month. [Case No. 5:16-CV-1-D, Dkt. No. 206; Case No. 5:16-CV-2-D, Dkt. No. 115]. Bragi has moved expeditiously for a stay to conserve party and court resources and not to gain an unfair advantage.

Finally, Valencell waited nearly an entire year to file its claim against Bragi after it filed its claims against Apple and Fitbit, despite Valencell's claim against Bragi covering the same subject matter and sharing two asserted patents in common with those cases. [*See* Dkt. No. 1; Case No. 5:16-CV-1-D, Dkt. No. 1]. Moreover, Valencell itself has not objected to a stay, at least with respect to the '941 and '965 patents [Dkt. No. 31 at ¶ 2], and thus no undue prejudice exists.

### B. <u>Staying the Entire Case Will Conserve the Court's and the Parties' Resources.</u>

Staying the entire case will conserve resources and avoid redundant or duplicative efforts. Valencell may argue that the Court should allow discovery to continue for all patents-in-suit or, if the Court grants a stay for the '941 and '965 patents, that it should not stay the case entirely and should allow discovery to continue for the '270 and '952 patents. These suggestions are unworkable and contrary to both the stated goal of the IPR process to conserve judicial resources, and Valencell's previous claims in the Apple and Fitbit cases that it is seeking to maximize judicial efficiency.[3]

---

[3] Valencell repeatedly justified its scheduling proposals in the Apple and Valencell cases on the ground of promoting judicial efficiencies. [*See* Case No. 5:16-CV-1-D, Dkt. No. 165 at 20:8-10; Rule 26(f) Report, Case No. 5:16-CV-2-D, Dkt. No. 25 at 1-2; Valencell's Opposition to Fitbit's Motion to Transfer, Case No. 5:16-CV-2-D, Dkt. No. 39 at 10].

One of the primary rationales for granting stays pending the resolution of IPR proceedings is to avoid the needless expenditure of time and money seeking discovery that may become irrelevant based on the outcome of the IPR proceedings. *See Biogaia AB*, 2011 WL 3664350, at *2 ("The fact that discovery has just begun makes a stay particularly attractive, as the parties can conserve resources while awaiting the determination of the PTO, resources that otherwise would be spent on what is likely to be a lengthy and costly discovery."). If the PTAB cancels the asserted claims, the resources expended in discovery for those claims will have been wasted.

Although the Court allowed discovery in the Apple and Fitbit cases to proceed until the PTAB issued a decision on the IPR petitions, here, the petitions have already been granted. Further, in the Apple and Fitbit cases, discovery was well underway when the motions to stay were filed, and the preexisting discovery deadline was very near the PTAB's deadline to institute the IPR petitions. [*See* Joint Discovery Plan, Case. No. 5:16-CV-1-D, Dkt. No. 135; Joint Proposed Amended Scheduling Order, Case No. 5:16-CV-2-D, Dkt. No. 71]. This Court noted in the Apple case that allowing the few remaining items in fact discovery to complete after institution of the IPR, before staying the case, would allow the parties the ability to "pick up where we left off," after the completion of the IPR proceedings. [Case No. 5:16-CV-1-D, Dkt. No. 165 at 10:21-11:5]. That concern does not apply here, as no discovery has begun. [*See* Dkt. No. 31].

The Court also agreed with Apple that supplemental discovery would still "definitely" be needed after the completion of the IPR proceedings due to the passage of time. [Case No. 5:16-CV-1-D, Dkt. No. 165 at 14:19-15-16]. In a situation such as the one presented in this case, it would be inefficient to begin the process of fact discovery when both parties know that another

round of fact discovery will be needed when the PTAB issues its final decisions. Staying the case, including fact discovery, will conserve resources by necessitating only one round of fact discovery.

Moreover, in the Apple case, this Court specifically did not allow expert discovery to continue before granting a stay because, "if I stay it, then it also obviates the need for everybody to spend more money on the expert process." [*Id.* at 19:6-8]. At that time, the expert discovery process had only just begun. Halting the process at that early stage allowed the parties and the Court to avoid incurring needless expense. Similarly, the fact discovery process in the present case has not begun. The Court's reasoning in the *Biogaia* case would foreclose any suggestion by Valencell that the Court allow the entire fact discovery process to proceed during the pendency of the IPR petitions. *See Biogaia AB*, 2011 WL 3664350, at *2.

In addition to the efficiencies that would result from a stay of the '941 and '965 patents, staying the case with respect to the '270 and '952 patents would further conserve resources. The risk of duplication of efforts, including two discovery calendars, two rounds of claim construction, and potentially two trials, will be avoided. Because the four patents-in-suit are similar, the outcome of the IPR proceedings may inform the discovery needed with respect to the '270 and '952 patents.

The most efficient option, and one that conserves the Court's and the parties' resources, is to stay the entire matter until the resolution of the IPR proceedings. This Court previously did just that in the Apple case, finding a stay of the entire case—including breach of contract and unfair competition claims that could not be resolved by the IPR proceedings—was warranted because it would conserve resources. [*See* Case No. 5:16-CV-1-D, Dkt. No. 1 at ¶¶ 42-56; Case No. 5:16-CV-1-D, Dkt. No. 206 at 1]. Indeed, courts routinely choose to stay an entire litigation

even when the instituted IPRs would not dispose of every claim in the lawsuit if successful. *See, e.g.*, *Biogaia AB*, 2011 WL 3664350, at *3 (staying entire case pending IPR, including unfair competition and deceptive practices claims not addressed by IPR petitions); *Paice LLC v. Ford Motor Co.*, No. CV MJG-14-492, 2015 WL 9898135, at *2 (D. Md. Aug. 12, 2015) (staying case even though one IPR had already been denied institution and second IPR petition was later denied institution); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-CV-1107 (GMS), 2014 WL 1369721, at *2, *5 (D. Del. Apr. 7, 2014) (granting stay of entire case where only four of six asserted patents were subject to IPR proceedings, because "there is no requirement that the issues in the IPR be identical to those in the litigation"); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014) (staying case where IPR was instituted for less than all of asserted claims because IPR would nonetheless provide "significant simplification of the issues").

## V. CONCLUSION

For the reasons stated above, Defendants Bragi Store LLC, Bragi North America LLC, and Bragi GmbH respectfully request that the Court grant its motion and stay the case pending the resolution of the IPR proceedings for the '941 and '965 patents.

Dated: July 20, 2017

Respectfully submitted,

ELLIS & WINTERS LLP
/s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.
N.C. State Bar No. 16847
Kelly Margolis Dagger
N.C. State Bar No. 44329
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Telecopy: (919) 865-7010
paul.sun@elliswinters.com
kelly.dagger@elliswinters.com

WILLIAM C. BERGMANN
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone: (202) 861-1500
Facsimile: (202) 861- 1783
wbergmann@bakerlaw.com

*COUNSEL FOR DEFENDANTS*
*BRAGI STORE, LLC, BRAGI*
*NORTH AMERICA, LLC,*
*AND BRAGI GMBH*

# CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2017, the foregoing document has been filed electronically via the Court's CM/ECF system, which will send notification of such filing to all counsel of record:

Jeffrey R. Bragalone
Brian P. Herrmann
Jonathan H. Rastegar
Patrick J. Conroy
BRAGALONE CONROY PC
220 Ross Avenue, Suite 4500W
Dallas, Texas 75201

Peter D. Siddoway
Lynne A. Borches
SAGE PATENT GROUP
4242 Six Forks Road, Suite 1550
Raleigh, NC 27609

ELLIS & WINTERS LLP

/s/ Paul K. Sun Jr.
Paul K. Sun Jr.